IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLARENCE MACKEY | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | Civil Action 4:18-cv-03271 |
| | § | Jury Demanded |
| BANK OF AMERICA, N.A. | § | |

**PLAINTIFF'S SUR REPLY TO DEFENDANT BANK OF AMERICA, N.A.'S REPLY BRIEF IN SUPPORT OF FIRST AMENDED MOTION FOR SUMMARY JUDGMENT**

Dated: May 22, 2020

John P. Venzke
The Venzke Law Firm
Federal ID Number 2374
Texas Bar Number: 20546500
Post Office Box 667485
Houston, Texas 77266
(713)522-1190
(713)559-0333 – facsimile
jvenzke@comcast.net

ATTORNEY-IN-CHARGE FOR
PLAINTIFF CLARENCE MACKEY

F. B. Harvie, Jr.
NOVELLI, HARVIE & ASSOCIATES, P.L.L.C.
TBN: 09184000
12600 N. Featherwood, Suite 120
Houston, Texas 77034
(281)484-9500
(281)484-9519 (Facsimile)
bharvie@nhapllc.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLARENCE MACKEY | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | Civil Action 4:18-cv-03271 |
| | § | Jury Demanded |
| BANK OF AMERICA, N.A. | § | |

**PLAINTIFF'S SUR REPLY TO DEFENDANT BANK OF AMERICA, N.A.'S REPLY BRIEF IN SUPPORT OF FIRST AMENDED MOTION FOR SUMMARY JUDGMENT**

The Bank's Response alleges that Plaintiff requests this Court to adopt a new cause of action that will wreak havoc on the banking industry. Rather, Plaintiff seeks to have this Court apply Texas law that is 100 years old to the discreet facts of this case.

**A.    Plaintiff does not seek to improperly amend his petition.**

The Bank is correct that Plaintiff has not amended his state court petition – there is no need to do so as it pleads negligence. The Bank complains that Plaintiff did not plead an assumption of a duty. Such a pleading is unnecessary. The elements of a negligence case are duty, breach of duty and damages resulting from the breach. *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013). Duty is to be decided by the Court. *Martinez v. Walgreen Co.*, 935 F.3d 396, 399 (5th Cir. 2019). Plaintiff relies on the doctrine of assumption of a duty and there is no requirement that it be pled.[1]

---

[1] If the Bank was confused by Plaintiff's reliance on negligence, it had the option of filing a request for a more definite statement of its pleading pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. It chose not to do so.

1

B.  **"Deterrence" v. "Prevention"**

The Bank attempts to make some sort of argument regarding the statement that crime can be deterred but not prevented. This comes from the testimony of Bennie Castro, the Banks's designated representative, who agreed with the statement "...you can't stop crime; you can deter crime....is that true? Yes, sir." "...but if an entity, a bank or someone else takes some action, it may deter that person...: That's correct." (Ex. A, Castro deposition at p. 14; Doc. 43, Ex. 7).

This concept is supported by the case law in which holds that measures should be taken to deter crime. *JoJos Rest., Inc. v. McFadden*, 117 S.W.3d 279, 282 (Tex. App.—Amarillo 2003, no pet.); *Thompson v. CPN Partners, L.P.*, 3 S.W.3d 64, 71 (Tex. App.—Austin 2000, no pet).

Plaintiff's position is clear – the Bank assumed a duty and did so negligently which failed to deter the criminals which resulted in the bank jugging incident.

C.  **The Uniform Commercial Code defense**

At some point in litigation, bank defendants turn to the labyrinth of the Uniform Commercial Code for protection. The Bank has done so in this case in stages.[2] In doing so, the initial problem for the Bank is it has no pleading to support what essentially is a preemption argument.

---

2 It first raised its head in the Bank's position portion of the Joint Pretrial Order when it alleged that all damages had been (...waived in the Deposit Agreement controlling the bank account....). (Doc. 38 at p. 4) It next morphed in a letter to the Court the defense of "limitations of damage pursuant to the banking agreement...." (Doc. 46 at p 2) It is now in full roar in the Bank's Response that this case is controlled by Article 4 of the Uniform Commercial Code.

2

The Bank relies on a case that states that "...[n]o Texas case addresses the scope of Article 4A....Article 4A has never been interpreted to preempt all common law claims; it is intended only to ban those claims that would be inconsistent with any of the article's provisions." *Moody Nat'l Bank v. Texas City Dev. Ltd., Co.*, 46 S.W.3d 373, 377 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). *See also Southwest Bank v. Information Support Concepts, Inc.*, 149 S.W.3d 104 (Tex. 2004). [3]

The Bank has failed to plead for any relief under the Texas version of the Uniform Commercial Code nor does it have any application to this dispute.

**D.    The Bank Assumed the Duty to Deter Jugging**

Prior to Plaintiff's bank jugging incident, the Bank knew about bank jugging, knew how it took place – a customer is followed off the Bank's premises -- and the Bank was concerned about bank jugging. (Ex. A, Castro deposition at pp. 46-48; Doc. 43, Ex. 7).

**1.    Preventative measures**

One of the Bank's responses to this known problem is revealed in two internal Bank documents produced in the request that the Bank supply all documents demonstrating the Bank's efforts to control jugging. [4]

The Bank's explanation for these documents is that it was merely "...sharing

---

3  The only other case cited by the Bank is *Bank of Texas v. VR Elec., Inc.*, 276 S.W.3d 671 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). This was a "...dispute about payment of a forged check." *Id.* What could more different than a forged check case and a bank jugging case?

4  Two of the documents produced were attached as Exhibit 8 to Plaintiff's Response and Opposition to the Motion for Summary Judgment. (Doc. 3, Exhibit 8 BANA 000002 – BANA 000003). These internal Bank documents detail the Bank's efforts to prevent jugging and were discussed in detail in Plaintiff's Response. (Doc. 43, pp. 17-18).

3

knowledge of a criminal activity known to a defendant, but over which Defendant has no legal duty to prevent or deter, does not assume a duty...." (Doc. 52 at pp. 17-18). In fact, according to Bennie Castro, these documents are the Bank's efforts to deter or if possible, to prevent jugging and provides things the Bank's employees "...can do to try to prevent jugging....") (Ex. A, Castro deposition at p. 15-16; Doc. 43, Ex. 7).

Bank employees were supposed to inform customers who withdrew large sums of money of this risk and how to avoid bank jugging. If they did not, it violated the Bank's policy. (Ex. A, Castro deposition at p. 66; Doc. 43, Ex. 7). Plaintiff was not warned of these risks violating the Bank' own policies. (Doc 42, Exhibit One, Declaration of Clarence Mackey). Further, despite that fact, both Bank employees were to notify customers, both documents state "post this picture on the Associate Bulletin Board, **out of the site [sic] of customer/public view.**" (Ex. B; Doc. 43, Exhibit 8 BANA 000002 – BANA 000003). Strange way to notify customers.

The documents also mention affirmative Preventive Measures that the Bank employees are to undertake to prevent a bank jugging. (Ex. B; Doc. 3, Exhibit 8 BANA 000002 – 000003). These are called Maintain Situation Awareness in BANA 000002 and Preventive Measures in BANA 000003. The Bank has assumed the duty of deterring and preventing bank jugging by its instructions to its own employees.

2.   **Security Officers and Off-Duty Police Officers**

The Bank produced BANA 000014 – BANA 000015 in response to a request to produce documents of what it did to deter or prevent jugging. (Ex. C; Doc. 43, Ex. 9, BANA 000014-15) It is titled Security Officers and Off-Duty Police Officers and states

as an Overview that "[s]ecurity officers or off-duty police officers are posted outside financial centers to maintain a highly visible presence, thus making the location unappealing to bank robbers." Plaintiff explained its position in detail in its original Reponses and the Bank did not contest that explanation in its response. (Doc. 43, pp. 18-20).

Mr. Castro admitted that these guards could deter jugging. (Ex. A, Castro deposition at pp. 23, 25 and 26; Doc. 43, Ex. 7). But despite that fact, there were no security guards when Plaintiff went to the Bank on July 26, 2016. (Ex. A, Castro deposition at pp. 45, 49; Doc. 43, Ex. 7).

### E. Plaintiff's federal authority is directly on point.

Plaintiff relies on two recent Texas federal court cases that involve liability for a criminal act by a person whom the defendant does not control and not on premises owned by the defendant.[5] And the liability is based on interpretation the Texas law of negligent undertaking. They are directly on point.[6]

The Bank unsuccessfully attempts to distinguish them. As the Court states in *Kristensen* "...this is not a claim of a private right of action; rather it is a claim for negligent undertaking, ground in state common law tort, which renders a party liable for breach of a

---

5 *Holcombe v. United States*, 388 S. Supp. 3d 777 (W.D. Tex. 2019); *Kristensen v. United States*, 372 F. Supp. 3d 461 (W.D. Tex. 2019). Both cases were discussed in detail in Plaintiff's initial Reponses to the Bank's Motion for Summary Judgment. (Doc. 43 at pp. 9-11).

6 The Bank argues that the state court cases cited by Plaintiff all deal with negligent acts that occurred on premises controlled by the tort feasor. That is simply incorrect. *Baldwin v. Tenneco Oil Co.*, 373 S.W.3d 350 (Tex. App.—Corpus Christi 1963, writ ref'd n.r.e.) is another case involving negligent undertaking in which the tort fear had no control over the property. It also discusses the cases relied upon by Plaintiff.

duty voluntarily assumed by affirmative conduct...." 372 F. Supp. 3d at 469. What authority could be more on point.

Further the Bank argues that there was no "...documentation from BANA specifically stating or even purporting to assume any duty related to jugging." And that the documents relied upon by the Plaintiff only attempts to "...notify customers about a known and potential criminal issue and how to modify their behavior." (Doc. 52 at p. 14). This argument was demolished in the section of this brief titled Preventative Measures, *supra* at 4-5.

The Bank attacks *Holcombe* largely on the ground that "...BANA is not the far reaching and powerful government of the United States of America, and should not be held to the same standards as such." (Doc. 52 at p. 16). Plaintiff makes no such argument. He merely seeks to have the Bank follow long standing Texas law and to follow its own standards. [7]

These cases are directly on point and support Plaintiff's cause of action.

### F. Prior incidents of jugging at the Bank

The Bank argues that there was not a single incident of jugging that occurred prior to Plaintiff's incident. (Doc. 52 at p. 14). This argument is invalid for three reasons. First, it is not relevant to this case which is based on an assumption of a duty that was negligently performed. The presence of prior similar crimes on site or in the neighborhood are only relevant to establish duty for a land owner in a premise's liability case. *See Timberwalk*

---

.

*Apt's Partners, Inc. v. Cain*, 972 S.W.2d 749, 756-57 (Tex. 1998),

Second, the Bank has acknowledged that jugging incidents can occur, does occur and how it occurs – a person is followed off the premises and robbed later at a different location. And that it seeks to prevent them and provides directions to its employees on how to do so. (Ex. B; Doc. 3, Exhibit 8 BANA 000002 – BANA 000003).

Third, the Bank has made it virtually impossible to prove prior jugging incidents because it destroyed its own records. Plaintiff discussed this in detail in its Response. (Doc. 43, at pp. 19-21). [8]

Plaintiff was in error in its original argument regarding spoliation. The Bank produced as Plaintiff's incident report BANA 000027 – BANA 000033. (Ex. D). Plaintiff took the position that pursuant to the Bank's representation, it only kept documents for six months and this would have been destroyed. A closer review of this document, however, reveals at BANA 000027 that it involved **another jugging incident that occurred on August 1, 2016,** at 8:17 a.m. Thus, the Bank was able to produce this document which should have been destroyed. Plaintiff's spoliation argument remains valid.

Despite the Bank's protestations to the contrary, Plaintiff only requests this Court apply long standing Texas law to the facts of this case.

---

[8] The Bank produced a document that purports to be a report of crimes on the premises from April 10, 2016, to July 15, 2019. This list did not state the type of event for anything that occurred prior to the Plaintiffs jugging. It did not list his event as jugging. (Doc. (Doc. 43, at pp. 16-17; Ex. 10, BANA 0000034 – 000035). And the Bank destroyed the backup documents making it impossible for Plaintiff to identify jugging incidents. *Id.*

By: /s/ *John P. Venzke*
John P. Venzke
The Venzke Law Firm
Federal ID Number 2374
Texas Bar Number: 20546500
Post Office Box 667485
Houston, Texas 77266
(713)522-1190
(713)559-0333 – facsimile

## CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record who are deemed to have consented to electronic service are being served this 22nd day of May, 2020, with a copy of the foregoing document via the Court's CM/ECF system in compliance with Local Rule 5.1. Any other counsel of record will be served via United States First Class mail on this same date.

/s/ *John P. Venzke*
John P. Venzke


Garett A. Willig
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, L.L.P.
909 Fannin Street, Suite 3300
Houston, Texas 77010

COUNSEL FOR DEFENDANT BANK OF AMERICA, N.A.