United States District Court
Southern District of Texas
**ENTERED**
November 19, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLARENCE MACKEY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-3271 |
| | § | |
| BANK OF AMERICA, N.A., | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Bank of America, N.A.'s ("BANA") Amended Motion for Summary Judgment. (Dkt. 32.) Having reviewed the motion, response, reply, sur-reply, applicable law and entire record, the Court finds that there is no genuine dispute of material fact and BANA is entitled to judgment as a matter of law. Accordingly, the Court **GRANTS** the motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts in this case are undisputed. Plaintiff Clarence Mackey ("Mackey") is the owner of a concrete supply company and regularly conducts business transactions in cash. (Dkt 43-1 at p. 1) On July 25, 2016, Mackey was a victim of a "bank jugging," a scheme in which a perpetrator watches a bank in order to find a potential victim, follows him or her to a different location and steals the money that the victim withdrew. (Dkt. 43 at Ex. 1) On that day, Mackey visited a BANA branch in Pearland, Texas. (Dkt. 43 at Ex. 3) He withdrew $7,000 in cash and proceeded to drive to a customer's site fourteen miles away from the bank. (Dkt. 43 at Ex. 3) As Mackey was

1

exiting his truck at the site, several assailants robbed Mackey of the cash that he had withdrawn from the bank and approximately $3,000 dollars that he already had in his possession prior to visiting the bank. Mackey recognized one of his assailants as having been in the bank at the same time he withdrew the money. No one has been arrested or charged in connection with the robbery. (Dkt. 43 at Ex. 1)

Mackey subsequently filed this action against BANA for negligence, seeking damages under the theory of negligent undertaking. Under this theory, Mackey alleges that BANA "assumed the duty to deter bank jugging on its premises but failed in a negligent manner to follow its own standards and that was a proximate cause of injury to Clarence Mackey." (Dkt. 43 at p.4) Specifically, Mackey alleges that BANA was aware that its customers could become jugging victims and had an internal policy of warning customers about this potential threat. As part of this policy, BANA branches placed posters on a bulletin board, outside the view of customers, instructing their employees to advise customers how to protect themselves from this type of crime. (Dkt 43 at Ex. 8) Mackey alleges that these posters instructed tellers to advise customers that upon leaving the bank, customers should conceal cash, not leave cash unattended in their vehicles, maintain situational awareness, and be aware of individuals appearing to perform surveillance on the bank. (Dkt. 43-1 at pp. 2–3) By instituting this policy, Mackey argues that BANA assumed a legal duty to protect him from becoming a bank jugging victim. Mackey argues that, having assumed this duty, BANA was negligent because its tellers did not warn him as they had been instructed to do, thereby causing him to become a bank jugging victim. (Dkt. 43-1 at pp. 2–3)

BANA has now filed the pending motion for summary judgment regarding Mackey's claims.[1] For the reasons discussed in greater detail below the motion is granted.

## APPLICABLE LAW

### A. Summary Judgment Standard

A movant is entitled to summary judgment when he or she shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). All facts must be viewed in the light most favorable to the non-moving party and the Court must make reasonable inferences in the non-movant's favor. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

When the non-movant bears the burden of proof at trial, the movant may point to the absence of evidence of one of the non-movant's claims. *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018). Once this has done so, the burden shifts to the non-movant to demonstrate that there is an issue of material fact warranting trial. *Id*. "If the

---

[1] As a collateral issue, Mackey argues that BANA spoliated evidence concerning its knowledge of prior instances of the bank jugging of its customers. Whether BANA was aware of such instances is immaterial to the Court's analysis of Mackey's claim for negligent undertaking. *See generally* Restatement (Second) of Torts § 323A (Am. Law Inst. 1965). Nevertheless, for the purposes of considering BANA's motion the Court will assume as true Mackey's allegation that BANA was aware of prior instances of bank jugging.

nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted." *Celotex*, 477 U.S. at 322–23.

In this case, BANA argues that it is entitled to summary judgment because there is no disputed issue of material fact and as a matter of law, Mackey has not established an essential element of his negligent undertaking claim: the existence of a legal duty owed by BANA to protect him from becoming a jugging victim.[2] The Court agrees.

**B. Negligent Undertaking**

Negligent undertaking is a viable tort theory under Texas law. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). As with a simple negligence claim, establishing the existence of a legal duty of care owed to the plaintiff is a minimal threshold requirement for stating a negligent undertaking claim. *Id*.[3] "The question of whether this duty exists is a question of law to be decided by the court. *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017). Texas law generally imposes no duty to protect others from criminal harm absent certain special relationships or circumstances.

---

[2] BANA also argues that it is entitled to summary judgment on the grounds that Mackey's claims are barred by the two-year statute of limitations. Because, as discussed below, the Court finds that Mackey cannot establish all the essential elements of his negligent undertaking claim, the Court does not reach BANA's limitations argument.

[3] BANA spills considerable ink in its motion and reply brief discussing well-established Texas case law that, in general, there is no duty at common law for a premises owner or occupier to warn or protect individuals from criminal conduct that occurs off premises. BANA's attempts to apply this case law to the facts at issue misconstrue Mackey's arguments as set forth in his response to the motion for summary judgment. Mackey does not argue, as suggested by BANA, that BANA had an existing duty at common law to protect its customers from a bank jugging. Instead Mackey argues that BANA *assumed* this duty through its conduct and was negligent in the performance of this duty.

4

*See e.g.*, *Torrington*, 46 S.W.3d at 837; *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995). "The fact that [an] actor realizes or should realize that an action on his part is necessary for another's aid or protection does not itself impose upon him a duty to take such action." Restatement (Second) of Torts § 314 (Am. Law Inst. 1965). The critical inquiry concerning the existence of the duty element of a negligent undertaking claim is whether a defendant acted in a way that requires the imposition of a duty where one otherwise would not exist. *Torrington,* 46 S.W.3d at 838–39.

Under the theory of negligent undertaking, one who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm under resulting from his failure to exercise reasonable care to perform his undertaking if (1) the failure to exercise reasonable care increases the risk of the harm that occurred; or (2) the harm is suffered because of the other's reliance upon the undertaking. Restatement (Second) of Torts § 323A (Am. Law Inst. 1965); *Torrington,* 46 S.W.3d at 838–39 (recognizing that Texas courts have adopted section 323A). Under this theory, an actor may normally abandon his efforts at any time without liability unless, by giving the aid, he has put the other in a worse position than he would have otherwise been in had the actor never attempted to help him. Restatement (Second) of Torts § 323A cmt. c (Am. Law Inst. 1965); *see also Cent. Power & Light Co. v. Romero*, 948 S.W.2d 764, 769, n.7 (Tex. App.—San Antonio 1996, writ denied) (holding that, as a matter of law, the defendant could not be liable to the plaintiff under the theory of negligent undertaking because there was no evidence that the defendant's negligent

inspection left the plaintiff in worse condition than if an inspection had never been undertaken). As the Restatement (Second) of Torts explains:

> The fact that the actor gratuitously starts in to aid another does not necessarily require him to continue his services. He is not required to continue them indefinitely, or even until he has done everything in his power to aid and protect the other. *The actor may normally abandon his efforts at any time unless, by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him.* His motives in discontinuing the services are immaterial. It is not necessary for him to justify his failure to continue the services by proving a privilege to do so, based upon his private concerns which would suffer from the continuance of the service. He may without liability discontinue the services through mere caprice, or because of personal dislike or enmity toward the other.
>
> *Where, however, the actor's assistance has put the other in a worse position than he was in before, either because the actual danger of harm to the other has been increased by the partial performance, or because the other, in reliance upon the undertaking, has been induced to forego other opportunities of obtaining assistance, the actor is not free to discontinue his services where a reasonable man would not do so."* (emphasis added)

Restatement (Second) of Torts § 323 cmt. c (Am. Law Inst. 1965).

Accordingly, to establish the existence of a legal duty owed by BANA to protect Mackey from becoming a jugging victim and state a claim under the theory of negligent undertaking, Mackey must establish either that BANA's conduct increased the risk of harm that occurred to him or that the harm was caused by Mackey's reliance on BANA's conduct. *Id.* Mackey has not made this showing.

## ANALYSIS

Mackey has not established that BANA's conduct in any way increased his risk of becoming a jugging victim. In determining whether there is an increased risk of harm, the

Court must compare "the risk of harm resulting from the alleged negligence to the risk of harm existing before, not during, the undertaking." *Entex, A Div. of Noram Energy Corp. v. Gonzalez,* 94 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Here, the alleged negligence was the bank teller's failure to follow BANA policy and instruct Mackey how to protect himself from becoming a jugging victim. (Dkt. 43 at pp. 4, 14) The Court finds that Mackey's risk of becoming a victim at the moment he walked away from the teller and was subsequently robbed was the same as his risk of becoming a victim before BANA instituted a policy to protect him. As an alleged result of BANA's failure to follow or abandonment of its policy, Mackey walked away from the teller as a potential victim who did not know how to protect himself from a jugging. (Dkt. 43-1 at pp. 2–3) Similarly, before BANA instituted the policy, Mackey was a potential victim who did not know how to protect himself from a jugging. (Dkt. 43-1 at p. 2) In other words, BANA's implementation and subsequent alleged failure to follow its alleged policies and procedures did not increase the risk of Mackey becoming a jugging victim. *See generally Torrington,* 46 S.W.3d at 838–39. BANA's conduct did not place Mackey in a worse position than he otherwise would have been in had BANA never attempted to protect him. *See* Restatement (Second) of Torts § 323 cmt. c. (Am. Law Inst. 1965). Mackey has offered no summary judgment evidence to the contrary.

Comment c to the Restatement (Second) of Torts § 323 (Am. Law Inst. 1965) provides the following illustration of a situation where there is increased harm warranting the imposition of a legal duty:

A, an employee of B Company, complains to the manager of the Company that she is ill, and asks that she be sent home. She is sent home in one of the Company's delivery wagons. The street leading to A's house is rough and unpaved, and although it is raining, the driver refuses to go further, and tells A to get out and walk the rest of the distance, as a result of which her illness is increased. B Company is subject to liability for the increase in A's illness caused by her exertion and her exposure to the rainy weather.

Analogous facts do not exist in the summary judgment record of the case at bar. In the example above, the employee was in a worse position than she would have been had her employer done nothing at all—she was left ill at the side of the road in the rain when previously she had been ill at work—and as result she became more ill. Here, Mackey was in the same position when he walked away from the teller that he would have been had BANA done nothing at all to protect him—he was a potential jugging victim not knowing how to protect himself. Thus, BANA did not owe a legal duty to protect Mackey from becoming a bank jugging victim and was free to discontinue its efforts to protect him at any time without liability.

Mackey has not established that he relied on any BANA policy or procedure to protect him from becoming a bank jugging victim. It is undisputed that the BANA posters instructing bank tellers to inform customers how to protect themselves from becoming a jugging victim could not be seen by bank customers. (Dkt. 43-7) Nor does Mackey allege any other BANA policy concerning bank jugging that he was aware of prior to being robbed. (Dkt. 43 at Ex. 1) Thus, for this additional reason BANA did not

owe a legal duty to Mackey and was free to discontinue its efforts to protect him at any time without liability. *See generally Torrington,* 46 S.W.3d at 838–39.[4]

Mackey's reliance on the holding in *Kristensen v. United States*, 372 F. Supp. 3d 461 (W.D. Tex. 2019) to establish the duty element of a negligent undertaking claim against BANA is misplaced. In that case, brought under the Federal Torts Claims Act, the court found that the plaintiff had established a claim under a negligent undertaking theory. However, the facts of that case are easily distinguishable from the case at hand. In *Kristensen*, the plaintiffs sued the government for negligently undertaking its duty to protect the victim from the perpetrator, an active duty Army soldier. *Id*. at 464. The victim had repeatedly sought help from her husband's (the perpetrator's) commanders and the perpetrator was known to and under the control of the United States Army. *Id*. Despite this, the United States failed to take steps to protect the victim. Upon leaving the Army base after his commanders forced him to live in the barracks for seven days, the perpetrator was able to purchase a firearm and ammunition and violently confront his wife and their neighbors. *Id*. at 463–64. Thus, in that case, unlike here, the criminal perpetrator was known to the defendant and under its control and the victim had gone to the defendant specifically seeking counseling and protection from the perpetrator's

---

[4] Under the facts of this case, creating a legal duty for a business to protect its customers from the criminal conduct by parties not under their control and that occurs far beyond their premises may be unwarranted for an additional reason –the creation of this duty may have the negative effect of discouraging other businesses from taking extra precautions that might protect its customers, for fear of being subjected to tort liability which they otherwise would not have had. *See Allen Keller v. Foreman*, 343 S.W.3d 420, 425 (Tex. 2011) (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010)) (holding that when considering whether to find that find that a defendant assumed a legal duty to protect a plaintiff from harm a court must balance "variety of factors, 'including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant.'")

criminal conduct off the defendant's premises—a military base. *Id*. at 469. Furthermore, in *Kristensen*, unlike here, there was deposition testimony that defendant understood and accepted the duty to protect the victim and that the victim relied on defendant's conduct to protect her. *Id*. at 467. Finally, by failing to respond to the known threat, the defendant in *Kristensen* also increased the risk of harm to the victims—one week before the murder, local police officers responded to a physical altercation between the victim and the perpetrator and declined to arrest the perpetrator based on his military status. *Id*. at 464; see also Restatement (Second) of Torts § 323 cmt. c. (Am. Law Inst. 1965) (noting that where an actor's assistance has caused a victim to forgo other opportunities of obtaining assistance, the actor must "exercise reasonable care to terminate his services in such a manner that there is no unreasonable risk of harm to the other, or to continue them until they can be so terminated").

Mackey's reliance on the holding in *Holcombe v. United States*, 388 F. Supp. 3d 777 (W.D. Tex. 2019), is similarly misplaced and that case is factually distinguishable from the case at bar. In *Holcombe*, survivors and relatives of a 2017 mass shooting at a church also sued the United States government under the Federal Tort Claims Act. The Court held that by enacting Department of Defense ("DOD") regulations mandating that certain information regarding a serviceman's past conduct be reported to National Instant Criminal Background Check System ("NICS"), the Government had "assumed a duty to act non-negligently in doing so." *Id*. at 805. In that case, unlike here, the perpetrator, a former armed services member, was known to the defendant and the specific threat he posed to the public was also known to the defendant. Furthermore, the regulations that

created the assumed duty were enacted to enforce federal laws specifically passed to protect the public from the type of harm posed by the perpetrator. *Id.* [5]

Accordingly, the Court finds that Mackey has failed to establish that BANA owed him a legal duty of care—an essential element of his negligent undertaking claim—and BANA's motion for summary judgment should be granted. [6]

## CONCLUSION

---

[5] Federal law prohibits certain categories of people from buying firearms. *See* 18 U.S.C. § 922. In *Holcombe*, the perpetrator fit into several of these categories: he was convicted of a crime punishable by imprisonment of more than one year, he was committed to a mental institution, he was dishonorably discharged from the Armed Forces, and he was convicted of a crime of domestic violence. Federal agencies, including the DOD, are required to report information that disqualifies people from owning firearms to the NICS at least quarterly. *Id.*

[6] To the extent Mackey is also arguing that, by instructing tellers to inform customers how to protect themselves from a bank jugging, BANA also assumed the duty to post guards inside the branch to "prevent" or "deter" a jugging, the Court finds this argument unpersuasive. "A person's duty to exercise reasonable care in performing a voluntarily assumed undertaking, will not normally give rise to an obligation to perform additional acts of assistance in the future." *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 397 (Tex. 1991).

For the reasons stated above, BANA's Amended Motion for Summary Judgment. (Dkt. 32.) is **GRANTED**. All other motions are denied as moot. The Court will issue a final judgment simultaneously with this opinion.

SIGNED at Houston, Texas, this 19th day of November, 2020.

*George C. Hanks Jr.*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE